BRYAN HAYES AND JOHN STUDDERT, RESPONDENTS, v. ADAM A. KEDZIE, APPELLANT.

*Appeal to County Court — New trial — when allowed — Demurrer — when abandoned — Draft — conversion of, by gratuitous bailee — delivery of.*

The right of a plaintiff, upon an appeal from a judgment of a Justice's Court, to a new trial in the County Court depends upon the amount claimed in the pleadings.

Where a defendant, after a demurrer has been overruled, pleads to the merits, he must be deemed to have abandoned his demurrer.

The plaintiffs having a claim against the county of Broome, for support rendered to an indigent person, the same was presented to, and allowed by the superintendents of the poor, at twenty-four dollars and thirteen cents. A draft for this amount was drawn by them on the treasurer, to the order of plaintiffs or bearer, and, as plaintiffs were not present, the defendant, one of the superintendents, took it to deliver to them. The same was subsequently presented by some person to the treasurer and paid. The plaintiffs never received the draft, nor any portion of the avails thereof. The defendant claimed that he had delivered the draft either to the plaintiffs or to a Mr. Russ. In an action by the plaintiffs to recover the amount of the draft, the jury found in favor of the plaintiffs. *Held*,

That the fact that the defendant was a mere gratuitous bailee did not prevent the plaintiffs from recovering.

That defendant might relieve himself from liability either by showing the loss of the draft, without gross negligence on his part, or that it was taken from him by force or fraud.

That the defendant could not insist that the plaintiffs had no title to the draft, on the ground that the same had never been delivered, as the plaintiffs were

entitled to ratify his act in taking the draft as their agent. (LEARNED, P. J., dissenting.)

THIS action originated in a Justice's Court, where the defendant succeeded. The plaintiffs appealed to the County Court, where a new trial was had, and a verdict was rendered for the plaintiffs for thirty-two dollars and fifty-seven cents, on which judgment was entered with costs, in all $120.09. A motion was made in the County Court for a new trial on a case and exceptions, which was denied, whereupon the defendant appealed to this court from the judgment and order.

The complaint contained two counts : The first was for the sum of twenty-seven dollars and interest, for money had and received ; the second was for twenty-four dollars and thirteen cents, the amount of an order or draft which the plaintiffs alleged the defendant had received under a promise to deliver it to them, and that he had neglected and refused to do so, although requested, and they demanded judgment for fifty-two dollars and thirteen cents, with interest from February 11, 1868, besides costs.

The defendant demurred to the complaint, and the demurrer being overruled by the justice, he answered to the merits. To the first count he interposed a general denial, and to the second a general denial, and further, that the order was delivered to the payees, and that payment thereof was made to them. The evidence given on the trial in the County Court related to the draft or order solely, and the recovery, was for the amount of the draft.

The defendant, when examined on the trial as to the disposition made by him of the draft, stated that it was either delivered to the plaintiffs or to a Mr. Russ, who was supervisor that year, and had the orders issued by the board of supervisors for the locality in which plaintiffs lived.

The facts of the case, briefly stated, were as follows : Hayes, Borrill & Co., who at the time of the bringing of the action were represented by the plaintiffs, had a claim against the county of Broome for relief rendered to an indigent person, which claim was presented to the superintendents of the poor of that county (the defendant being one), and the same was audited and allowed at the sum of twenty-four dollars and thirteen cents. A draft or order for this sum was drawn by the superintendents on the treasurer of the county, payable to Hayes, Borrill & Co., or bearer, and the

payees not being present to receive it, the defendant took it to deliver to them. The draft was subsequently presented to the treasurer and was paid by him. But according to the verdict of the jury, the defendant did not deliver it to the payees, nor was payment of it ever made to them. The jury rendered a verdict against the defendant for thirty-two dollars and fifty-seven cents, the amount of the draft, with interest.

At the close of the trial, the defendant's counsel moved for a nonsuit upon the ground, among others, that the County Court had no jurisdiction of the appeal. The motion was denied and the ruling was duly excepted to.

Such other facts as are deemed material to the examination of the case, appear in the following opinion.

*T. & A. More*, for the appellants.

*Alex. Cumming*, for the respondents.

BOOKES, J. :

By pleading to the merits, the defendant must be held to have withdrawn or abandoned his demurrers. (*Peck* v. *Cowing*, 1 Denio, 222 ; *Irvine* v. *Forbes*, 11 Barb., 587 ; *Harper* v. *Leal*, 10 How., 276 ; *Jones* v. *Thompson*, 6 Hill, 621.) The case must be examined on the issues raised by the answer to the merits.

It is urged that the appeal in this case was on the law only, that it was not a case for a retrial in the County Court, for the reason that the claim litigated did not exceed fifty dollars. (Code, § 352.) This point was not raised in the County Court, either by special motion, as in *Houghton* v. *Kenyon* (38 How., 107), or by objection on the trial, if indeed it could have been made available there in either mode. True, the defendant moved for a nonsuit at the close of the trial, on the ground that the court had no jurisdiction of the appeal, but for what particular reason does not appear. The motion was therefore baseless, in so far as we can see. But the case was one for retrial. This question was to be determined from the pleadings. By the complaint, the plaintiffs' claims for which judgment was demanded exceeded fifty dollars. Such claims determined the right of the parties to a retrial on the appeal. (Code, § 352 ; *Ovenshire* v. *Adee*, 27 How., 368 ; *Hobbs* v. *Wetherwax*, 38 How., 385 ;

*Thompson* v. *Pine*, 12 N. Y. Sup. Ct. Rep. [5 Hun], 647.) The case is, therefore, before us on the merits.

It was undisputed on the trial, that the draft was duly made out for Hayes, Borrill & Co., on the treasurer, payable to the firm or bearer, and that the defendant took it into his possession to deliver to the payees; also, that it was afterwards presented to the treasurer and was paid by him in due course of business. The principal question litigated, was whether the defendant made delivery of the draft to the payees, as he assumed to do. The jury found that he did not, and it may be added that by the verdict, it was found also that the payees never received payment of the draft from any quarter. Then the case is this : (1) That the defendant took the draft for the payees, to be delivered by him to them ; (2) that he omitted to make delivery of it; (3) that it was afterwards presented to the drawee for payment by some one other than the payees, and was paid by him in due course of business ; and (4), that when called upon by the payees for the draft, the defendant took the ground that he had delivered it to them in fact. These facts made out a *prima facie* case against the defendant as matter of law. Thus the *onus* was cast upon him to show something, discharging him from liability. The plaintiffs had made application to him for the draft, and could not obtain it. The rule was laid down in *Coykendall* v. *Eaton* (37 How., 438–441) that a mere gratuitous bailee who delivers the property to a wrong party, or, who after demand does not in any way account for its loss, is liable to the true owner for its value. Now what defense did the defendant interpose? First, that he had in fact delivered the draft to the payees. But the jury found against him on this issue. Secondly, he sought to show that he delivered it to Mr. Russ, as if this fact if proved would discharge him. But as to this even, there was a conflict of evidence, and the jury may have found against him also on this issue. Indeed, if the case turned upon this issue such must be deemed to have been the finding. It was going quite as far as the court could properly go in this case, holding in mind the evidence submitted, to instruct the jury that delivery to Russ would discharge the defendant in case the payees authorized such delivery or gave it ratification, for it might well have been insisted that there was no evidence whatever of such authorization or ratification. Now the

*onus* was on the defendant. It lay with him to relieve himself from liability. This he might do by showing the loss of the draft without gross negligence on his part, or that it was taken from him by force or fraud. But neither of these defenses was attempted. He put his defense at all times when called upon to answer for the draft, on other grounds, to wit, that he had made delivery to the payees or to Russ. This was what he claimed when approached upon the subject before the suit was commenced, and this was insisted upon in the pleadings and on the trial. In this defense he failed. The jury found against him on a very serious conflict of evidence. He must be held to be concluded by their verdict.

It is urged that the plaintiffs failed to show any title to the draft, that it was never delivered. But the defendant is not at liberty to hold this position. He assumed an agency and duty in regard to the draft which the plaintiffs might recognize, and to which they might bind him by a ratification. It has been repeatedly held that where one party assumes the performance of a trust or duty for the benefit of another, although without his knowledge at the time, the latter may affirm the trust or duty and enforce its due performance. (*Commercial Bank* v. *Warren*, 15 N. Y., 577–580 ; *Heermans* v. *Clarkson*, 64 id., 171.) Here the plaintiffs have elected to hold the defendant to the obligation he assumed to perform for their benefit. The case is therefore the same as if the defendant, on the plaintiffs' request, had taken charge of the draft to make delivery of it to them. Thus the draft became the plaintiffs' property in the hands of the defendant, and he was liable to them for it to the extent of the obligation which he assumed.

The conclusion reached on this examination of the case, based on the verdict of the jury in favor of the plaintiffs on every material question of fact, necessitates an affirmance of the judgment. And it may be here remarked that the view above taken of the case leaves no question for consideration on the exceptions to the charge of the judge or on his refusal to charge as requested.

The judgment must be affirmed, with costs.

BOARDMAN, J., concurred, believing that the defendant assumed to act as the agent of the plaintiffs, and not as a superintendent, in taking the order.

LEARNED, P. J. (dissenting):

The defendant was one of the superintendents of the poor, and as such held the order in question. It had not been delivered to the plaintiffs, and had not become their property. If, as might very possibly be the case, there had been another order in the defendant's possession, of the same amount, the plaintiffs could not have insisted that one of these orders was their property, and the other was not. Treating the orders as bills of exchange, they were in possession of the drawer, not delivered. Until delivery, the plaintiffs had no title to any one of them. If the superintendents who drew this order, or any one of them, had chosen to destroy it, the plaintiffs would have had no cause of action on the ground of the destruction of their property. It does not add to their rights that the defendant, one of these superintendents, intended to deliver this order to the plaintiffs. If he did deliver it, then of course they have no cause of action. If he did not deliver it, then their claim against the county has not been paid. If the superintendents had voluntarily handed this order, and all the orders to John Doe, it would have been a great violation of official duty; and they might possibly have been liable to the plaintiffs for a neglect to audit. But the order would not have been the property of the plaintiffs, so that they could sue for the negligent carrying of it, or for its conversion.

The plaintiffs claim that, as the defendant took the order for the purpose of delivering it to the plaintiffs, the payees, he became at their option, their agent.

But the objection to that view, is this: The defendant, as one of the superintendents, was rightfully in possession of the order. His mere intention to deliver it to the plaintiffs at some future time was not an act on their behalf, as their agent, which they could ratify. And his possession of the order was not the plaintiffs' possession. Even his carrying it from the place where it was drawn to some other place, was an act which he could do as superintendent. It was not an act done on behalf of the plaintiffs and constituted no delivery to them. There was nothing for them to ratify.

To illustrate: If a firm, being indebted to some person, should make a note for the amount, payable to bearer, and one of the firm should take the note, with the intention of giving it to the creditor,

and should afterwards give it to some other person, the creditor could not treat this as a conversion, or as the negligent act of a bailee. It is said by the plaintiffs that this order was made out *for* them. Undoubtedly it was the intention of the superintendents to deliver this order to the plaintiffs. But it all rested in intention. And the intention to deliver this order to the plaintiffs did not make it theirs. Some act was necessary by which it should pass from the control of the superintendents to some other person, either to the plaintiffs or to some person acting for the plaintiffs, other than the superintendents themselves. If the superintendents or the defendant, had delivered the order to some other person who assumed to act as the agent of the plaintiffs, it would be competent for the plaintiffs to ratify the act of that assumed agent. But no such case exists. For neither the superintendents, as a body, nor the defendant as one of them, can be considered as the agents or agent of the plaintiffs. Neither they, nor he, assumed to act as such.

If, for instance, this order was in fact left with Mr. Russ for the plaintiffs, and Mr. Russ received it on their behalf, they might ratify the act of Mr. Russ in receiving it. For then it would have been delivered by one who had full control over it, to another whose only control would be that of agent, actual or assumed, of the plaintiffs. But until such delivery, or some similar delivery, the defendant and the other superintendents had the full title to and possession of the order, and were not in any sense agents of the plaintiffs, actual or assumed.

The judgment should be reversed, with costs.

Present — LEARNED, P. J., BOCKES and BOARDMAN, JJ.

Judgment affirmed, with costs.